UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

November 23, 2021

LETTER TO COUNSEL

    RE:    *Harland B. v. Kijakazi*
             DLB-19-2913

Dear Counsel:

    On October 3, 2019, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF 1. I have considered the arguments plaintiff made in his complaint, ECF 1, and the Commissioner's Motion for Summary Judgment, ECF 9. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards and made findings supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). This letter explains my rationale.

    Plaintiff filed his claim for DIB on October 6, 2015, alleging an onset date of October 1, 2013. Administrative Transcript ("Tr.") 282. That claim was initially denied on January 26, 2016. Tr. 154. Plaintiff requested reconsideration and applied for SSI on March 10, 2016, also alleging an onset date of October 1, 2013. Tr. 158, 286. The SSA denied both the SSI claim and the DIB claim on July 15, 2016. Tr. 164–67, 168–71. An Administrative Law Judge ("ALJ") held a hearing on July 27, 2017, but the hearing was continued because plaintiff indicated that he acquired representation. Tr. 66–69. The ALJ then held a full hearing on May 22, 2018. Tr. 70–109. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 7–28. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1–6; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

    The ALJ found plaintiff severely impaired by "Alcohol Addiction, obesity, arthritis of the knees, arthritis of the left ankle, and multilevel spinal . . . and foraminal stenosis of the cervical

*Harland B. v. Kijakazi*
DLB-19-2913
November 23, 2021
Page 2

spine." Tr. 13. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple routine tasks where he does not have to work at a production rate pace as you would typically find on an assembly line or in piecework; where changes in routine with the addition of new or more complex tasks does not occur more frequently than once a month, on the average; [and] where he does not have to interact with the public or co-workers on more than an occasional basis.

Tr. 15. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform any past relevant work as a computer repairer, telephone solicitor, or general hardware salesperson. Tr. 19. The ALJ concluded, however, plaintiff could perform other jobs existing in significant numbers in the national economy. Tr. 20–21. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 21.

On appeal, plaintiff makes several arguments. Plaintiff argues the ALJ was biased against him and that this bias affected the ALJ's credibility determination and evaluation of his obesity. Plaintiff also challenges the weight the ALJ assigned several medical opinions and the RFC determination. Plaintiff claims the ALJ failed to properly develop the record. Finally, plaintiff challenges the ALJ's step-five finding that work within plaintiff's capabilities exists in significant numbers in the national economy. After a careful review of the medical records, the ALJ's decision, and Fourth Circuit case law, the Court finds these arguments are without merit.

      I.      Bias

The Fourth Circuit has not specifically set out the standard for establishing bias of an ALJ presiding over a Social Security hearing. The Supreme Court has addressed the standard for establishing bias against "hearing officers" in the related context of Medicare determinations under Title XVIII of the Social Security Act. *See Schweiker v. McClure*, 456 U.S. 188, 189 (1982). There, the Court noted the hearing officers served "in a quasi-judicial capacity, similar in many respects to that of administrative law judges." *Schweiker*, 456 U.S. at 195. The Court wrote that while "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities[,] . . . [the Court] must start from the presumption that the hearing officers . . . are unbiased." *Id.* (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242–243 n.2 (1980); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *United States v. Morgan*, 313 U.S. 409, 421 (1941)). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification[,] . . . [b]ut the burden of establishing a disqualifying interest rests on the party making the assertion." *Schweiker*, 456 U.S. at 195.

The Fourth Circuit has observed in cases outside the Social Security context that "[t]o be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case." *Bowens v. North Carolina Dep't of Human Resources*, 710

F.2d 1015, 2010 (4th Cir. 1983).  Thus, where a plaintiff did not make "any showing of bias stemming from sources outside the decisional process," the Court found the presumption that the administrative decisionmakers are unbiased had not been overcome.  *Morris v. City of Danville, Virginia*, 744 F.2d 1041, 1044–45 (4th Cir. 1984) (holding an administrative officer did not cease "to be an impartial decisionmaker simply by virtue of having made a conditional decision to terminate [the plaintiff] pending further developments in an administrative process [that] had not then closed").  Other District Courts in the Fourth Circuit have applied the reasoning of *Bowens* and *Morris* to Social Security cases.  *See, e.g.*, *Warren v. Colvin*, No. 4:14-cv-02517-JMC, 2015 WL 5673118 (D.S.C. Sept. 25, 2015) (finding the plaintiff failed to meet the heavy burden of proof in establishing an ALJ's bias though an ALJ made an adverse credibility finding as to and issued an unfavorable decision to the plaintiff); *Nichols v. Colvin*, No. 1:14CV536, 2015 WL 4656484 (M.D.N.C. Aug. 5, 2015) (finding the plaintiff failed to overcome the presumption that the ALJ was unbiased where "[a]ny 'expressions of impatient, dissatisfaction, annoyance, [or] even anger,' demonstrated by the ALJ during the evidentiary hearing were 'within the bounds of what imperfect men and women…sometimes display' and do not establish bias") (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)); *McAuley v. Colvin*, No. 7:12-CV-311-D, 2013 WL 7098724 (E.D.N.C. Dec. 12, 2013) (finding the ALJ's impolite, impatient, and intemperate remarks did not deprive the plaintiff of a fair hearing).  The Court applies that reasoning here.

Plaintiff has not overcome the presumption that the ALJ was unbiased.  Plaintiff points to nothing specific that would suggest the ALJ was biased against him.  Rather, he seems to disagree with the ALJ's conclusions about his statements of symptoms and the effect of his obesity on his functioning.  An ALJ, however, appropriately weighs those considerations as part of the decision-making process.  Further, the ALJ in this case expressly noted that plaintiff's inconsistent statements "may not [reflect] a conscious intention to mislead." Tr. 18.  The ALJ thus did not conclude that plaintiff intentionally lied about his symptoms.  Rather, the ALJ simply noted, in reference to the weight the statements carried in the decision-making process, that plaintiff's statements "may not be entirely reliable." Tr. 18.  As to his obesity, plaintiff argues the ALJ was biased but identifies nothing in the record that would suggest bias.  Plaintiff essentially disagrees with the ALJ's conclusions. Distilled to its essence, plaintiff's argument amounts to a request that the Court reweigh the evidence, which is beyond the power of the Court to do.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Accordingly, the Court finds the presumption that the ALJ was unbiased has not been overcome and that remand is therefore unwarranted on this basis.

## II.   Opinion Evidence

Plaintiff makes several arguments relating to opinion evidence.  First, he argues the ALJ failed to follow the treating physician rule with respect to his "mental health physician and primary care physician." ECF 1, at 5.  Second, he argues "[i]nsufficient weight was given to [his]" acceptable medical sources, including his "mental health therapists and physical therapists." *Id.* Finally, he argues "[t]he Commissioner gave weight to an unacceptable medical source based on a subjective statement without a specific reason without following the inquisitory proceedings by either requesting additional medical evidence or sending [him] to a consultative examiner." *Id.*

"[T]he treating physician rule is well-established." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020). It "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).[1] Should an ALJ decide that a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine the appropriate weight to assign the opinion by considering several factors, all of which also must be considered when evaluating medical opinion evidence—whatever the source. *Id.*; 20 C.F.R. § 404.1527(c), (c)(2). Those factors are: the length and nature of the treatment relationship, 20 C.F.R. § 404.1527(c)(1), (c)(2)(i)–(ii); whether the opinion is supported, "particularly [by] medical signs and laboratory findings"; whether the opinion is consistent with the record as a whole; whether the opinion is "related to [the provider's] area of specialty"; and any other relevant factors, *id.* § 404.1527(c)(3)–(6). "An ALJ need not apply [the] factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion." *Spitzbarth v. Comm'r, Soc. Sec. Admin.*, No. ADC-17-2934, 2018 WL 4705784, at *5 (D. Md. Sept. 28, 2018).

The ALJ assigned the opinion of therapist Allen Emerson "little evidentiary weight." Tr. 18. The ALJ reasoned Emerson had seen plaintiff only twice at the time he made the evaluation. Tr. 18. Further, the ALJ discredited some of the reasons offered by Emerson: "He cites 'explosive anger has occurred while on the job. He has eight assault charges; Depression and anxiety impact his cognitive function[,]' . . . but the explosive anger on the job occurred prior to the alleged onset date while the claimant was employed and apparently intoxicated, and there is little if any evidence to support impaired cognitive functioning when not intoxicated." Tr. 18. The ALJ cited evidence in which plaintiff's mental limitations were attributed to his alcohol use disorder. Tr. 17 (citing Tr. 661, 691, 752). Plaintiff himself reported that "due to his substance use problem, he has been fired from about 5 jobs." Tr. 679. The ALJ discussed this and other related evidence throughout the opinion. *See* Tr. 17–18. The ALJ thus referenced "persuasive contradictory evidence" controverting Emerson's opinion that justified giving it little evidentiary weight. *See Arakas*, 983 F.3d at 107. The Court finds that the ALJ followed the treating physician rule in evaluating Emerson's opinion.

The ALJ also assigned the opinion of nurse practitioner Simone Brady "little evidentiary weight." Tr. 19. The ALJ noted Brady "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], as most questions indicate 'per patient.'" Tr. 19. The ALJ noted that "there exist good reasons for questioning the reliability of [plaintiff's] subjective complaints." Tr. 19. The ALJ challenged the medical basis for the opinion, stating that the provider explicitly noted the functional limitations in the opinion were based on plaintiff's own accounts. For a medical opinion to be entitled to controlling weight, it need be based on clinically acceptable diagnostic techniques. Here, the provider was clear that the functional limitations were

---

[1] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. It was replaced by § 404.1527c for claims filed on or after March 27, 2017. Plaintiff's claims were filed before 2017. Tr. 282, 286.

based on plaintiff's own statements rather than an evaluation of his physical capacity. Thus, the ALJ's assignment of little, not controlling, weight to Brady's opinion complies with the treating physician rule. To the extent plaintiff challenges the amount of weight actually given to the opinion, the ALJ's assignment of weight is supported by substantial evidence. A review of the opinion itself makes clear the ALJ's characterization of the opinion is accurate.[2]

Finally, the ALJ afforded the state consultant's reconsideration opinion "substantial weight because it [was] supported by objective signs and medical findings in the record." Tr. 18. The ALJ further noted, "however, [plaintiff's] alcohol abuse does warrant additional limitations described in the [RFC]." Tr. 18. To the extent plaintiff argues the ALJ's evaluation of this opinion was legally erroneous, I disagree. State agency consultants form opinions based on the record provided by the claimant. Plaintiff has provided no explanation for how the state agency consultant in his case was an "unacceptable medical source" who based the opinion on "a subjective statement without a specific reason." *See* ECF 1, at 5. Indeed, the reconsideration notification makes clear the consultant opined based on several medical reports in the record. Tr. 164; *see* Tr. 154.

Accordingly, I disagree with plaintiff that the ALJ erred in weighing the opinion evidence.

III.   RFC

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3. The ALJ is required to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). "In other words, the ALJ must both identify evidence that supports [her] conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

Plaintiff generally challenges the ALJ's RFC determination and specifically challenges the fact that the ALJ did not find any limitations in stooping, bending, and reaching. ECF 1, at 5. However, the ALJ adequately explained his conclusions and cited substantial evidence while analyzing plaintiff's RFC.[3]

---

[2] The ALJ gave "some weight" to treating physician Julie Yetso's opinion that plaintiff "was able to work." Tr. 19. The ALJ noted Yetso was a treating provider but that she was not specific as to plaintiff's residual functional capacity. Tr. 19. The exhibit the ALJ cites contains treatment notes. *See* Tr. 19, 809–43. It does not appear to contain a medical opinion subject to the treating physician rule.

[3] Plaintiff relatedly argues the VE "should have been questioned about limitations such as stooping, bending, reaching, etc." ECF 1, at 5. The ALJ did not find plaintiff had any limitations in those functional areas, Tr. 15, and there was substantial evidence for that finding. The ALJ,

With respect to plaintiff's physical impairments, the ALJ thoroughly discussed the objective medical evidence of the severity of those impairments and plaintiff's own statements about his limitations. The ALJ discussed the objective medical evidence that generally showed mild changes to both plaintiff's knees and back. Tr. 16–17. The ALJ also considered the extent of the treatment plaintiff had sought out and received, noting that it had been generally conservative in nature and consisted of physical therapy, injections, and medication. Tr. 16–17. The ALJ also noted numerous normal findings that substantially support the ALJ's conclusion that plaintiff could engage in light work. Tr. 18 (discussing plaintiff's gait, muscle tone, balance, and coordination). The ALJ also credited plaintiff's own statements. For example, the ALJ noted plaintiff's statement that his knee was 80 percent improved with physical therapy. Tr. 16 (citing Ex. 24F/13). He also considered plaintiff's statements that he does yard work, washes clothes, shops in stores, and cleans the house. Tr. 16, 18. Plaintiff testified that he "help[s] out around the house whenever [he] can, as well as any . . . work that [his] father may need some help with . . . trimming, cutting." Tr. 75. Although he testified that his father does not push him "too much," Tr. 76, the statements are nonetheless consistent with the ALJ's conclusion that plaintiff could engage in light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.).

With respect to plaintiff's mental impairments, the ALJ thoroughly discussed the evidence of record, including the fact that plaintiff's providers "agree[d] that [his] alcohol abuse is the primary contributor to his anxiety and depression." Tr. 18. The ALJ cited normal findings documented during treatment encounters when plaintiff was not intoxicated. Tr. 18.

Although the Court sympathizes with plaintiff, who faces significant challenges in his daily life, the ALJ engaged in legally permissible reasoning with respect to plaintiff's RFC, and substantial evidence supported his RFC determination.

IV.   Duty to Develop the Record

Plaintiff also argues the ALJ erred in failing to develop the record. ECF 1, at 5. This argument is unpersuasive. Where the evidence supplied by a claimant adequately supplies a basis for the ALJ's decision, an ALJ is not required to acquire more evidence. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Such was the case here. Further, plaintiff was represented by counsel at the hearing before the ALJ. When a claimant has counsel, the ALJ need not take as active of a role in developing the record as he would if the claimant were unrepresented. Tr. 70; *see Craig*, 76 F.3d at 591 (noting the more active role ALJs need take in the Fourth Circuit where the plaintiff is pro se but finding the ALJ nonetheless fulfilled that duty where the ALJ inquired

---

therefore, properly excluded those limitations from the RFC determination and did not have to ask the VE about them.

about, "inter alia, [the plaintiff's] education level (ninth grade), her ability to read and write, her living conditions, her former work, her daily activities, and her subjective complaints of pain"). Even so, the ALJ here questioned plaintiff at length and reviewed the numerous medical records submitted by plaintiff. Tr. 7–28, 70–109. The Court therefore finds the ALJ has fulfilled any duty to develop the record.

V.  Step Five

Plaintiff argues the ALJ erred at step five because "[t]he [VE] did not provide statistics on [his] local economy and the national economy as required to compare number of jobs listed to the number of jobs available." ECF 1, at 5. This argument is without merit. The occupations considered at step five "must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. §§ 404.1560(c), 416.960(c). "It does not matter whether . . . [w]ork exists in the immediate area in which you live." *Id.* at §§ 404.1566(a)(1), 416.966(a)(1). Accordingly, "if work that [a claimant] can do does exist in the national economy, [the SSA] will determine that [the claimant] is not disabled." *Id.* §§ 404.1566(b), 416.966(b). Thus, because the ALJ complied with the relevant regulations in finding at step five that plaintiff was not disabled, remand is not warranted.

Ultimately, the law confines my review to whether the ALJ employed correct legal standards in making factual findings supported by substantial evidence. *Craig*, 76 F.3d at 589. Inherently limited in scope, substantial evidence review asks only whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). The inquiry is therefore not whether I agree with the ALJ's conclusions but whether "more than a mere scintilla" of evidence supports them. *See Hays*, 907 F.2d at 1456. On the record before me, I find the ALJ applied correct legal standards and made findings supported by substantial evidence.

For the reasons set forth herein, defendant's motion for summary judgment, ECF 9, is granted. The SSA's judgment is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

Deborah L. Boardman
United States District Judge